UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
H&M HENNES & MAURITZ LP,

                              Plaintiff,            **MEMORANDUM
                                                    A N D   O R D E R**

                    - against -
                                                    07 CV 1723 (CLP)
SKANSKA USA BUILDING, INC.
*as successor-in-interest to Barney Skanska
Inc. and Sordoni Skanska Inc.* and
SEASONS CONTRACTING CORP.,

                              Defendants.
-------------------------------------------------------X

On April 25, 2007, plaintiff H&M Hennes & Mauritz LP ("H&M") commenced this

subrogation action against defendant Skanska USA Building, Inc. ("Skanska"), as successor-in-

interest to Barney Skanska Inc. and Sordoni Skanska Inc., and defendant Seasons Contracting

Corp. ("Seasons"), seeking compensation for damage to plaintiff's store which was allegedly

caused by construction work performed by defendants under a contract with plaintiff's landlord,

Macerich Queens Limited Partnership ("Macerich"). Defendant Skanska moves for summary

judgment, seeking dismissal of the case in its entirety on the grounds that plaintiff's lease

agreement included a waiver of subrogation provision which precludes plaintiff's claims.

On June 26, 2008, the case was reassigned to the undersigned based on the parties'

consent. On November 17, 2008, the Court heard oral argument on Skanska's motion, and

hereby grants the motion and dismisses all claims against Skanska.

## FACTUAL BACKGROUND

Plaintiff H&M is a New York-based clothing retailer. (Compl.[1] ¶ 1). Defendant Skanska[2] is a general contracting and construction management corporation organized under Delaware law, with its principal offices located in New Jersey. (Id. ¶ 2). Defendant Seasons is a New Jersey-based construction corporation. (Id. ¶ 4). Plaintiff brings this action under New York law pursuant to the Court's diversity jurisdiction.

On September 5, 2001, H&M entered into a lease agreement with Macerich to rent space for a retail clothing store located in the Queens Center Mall ("the Mall"). (Stmt. of Facts[3] ¶ 9; Compl. ¶¶ 1, 7-10; Def.'s Aff.[4] Ex. D at 1). The lease agreement contemplated a possible expansion of H&M's space and a related expansion of the Mall, which is an indoor Mall containing other retail establishments, parking spaces, hallways, and various common areas. (Def.'s Aff. Ex. D, Exs. B-3, -4).

On June 21, 2002, Macerich entered into a contract with Skanska to perform renovations at the Mall, at a contract price of roughly $17 million. (Stmt. of Facts ¶ 6; Compl. ¶ 13).

---

[1]Citations to "Compl." refer to plaintiff's Complaint, filed April 25, 2007.

[2]Defendant Skanska USA Building Inc. is the U.S. arm of the Swedish company, Skanska AB. (Id. ¶ 3).

[3]Citations to "Stmt. of Facts" refer to the Statement of Material Facts submitted by defendant Skanska pursuant to Local Rule 56.1, dated September 12, 2008. Since plaintiff did not submit a statement of facts responding to Skanska's Statement, the facts set out in Skanska's Statement are deemed admitted for purposes of this motion. Local Rule 56.1(c). Further, plaintiff states in its brief that it "substantially adopts the comprehensive Factual Statement of SKANSKA." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed September 30, 2008 ("Pl.'s Mem."), at 1).

[4]Citations to "Def.'s Aff." refer to the Affirmation in Support of Motion for Summary Judgment Dismissing Complaint, signed by Jonathon Groubert and submitted by defendant Skanska on September 12, 2008.

Skanska subcontracted some of the renovation work to defendant Seasons. (Stmt. of Facts ¶ 7).

On or about April 27, 2004, a flood occurred in plaintiff's retail space, causing significant damage to the store and its merchandise. (Compl. ¶¶ 16, 18). H&M alleges that the flooding of its store was caused by the negligent performance of renovation work by Seasons. (Stmt. of Facts ¶¶ 3, 7; Compl. ¶¶ 13, 17). H&M further alleges that, because it was an intended third party beneficiary of Skanska's contract with Macerich and Seasons' subcontract with Skanska, defendants breached duties of care owed to plaintiff under these agreements. (Compl. ¶¶ 26-28). H&M's losses have been covered by its insurance carrier, and this lawsuit is a subrogation action brought by the insurance carrier in plaintiff's name, seeking compensatory damages in the amount of $310,353.00. (Stmt. of Facts ¶ 8; Compl. ¶ 24).

Defendant Skanska moves for summary judgment in its favor, seeking to dismiss H&M's subrogation claim on that grounds that the lease agreement between H&M and Macerich contains a waiver of subrogation provision that precludes any claims by H&M against independent contractors hired by Macerich. H&M contends that the provision was not intended to apply to Skanska because the work it performed was outside the type of activities contemplated by the lease subrogation clause and because, as applied to Skanska, the provision violates concepts of mutuality under New York contract law in that Skanska did not obtain the appropriate insurance coverage required by the lease provision.


## DISCUSSION

### A. Standards for Summary Judgment

It is well-settled that a party moving for summary judgment has the burden of establishing

that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990).  Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied.  See Auletta v. Tully, 576 F. Supp. 191, 194 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984).  In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c) of the Federal Rules of Civil Procedure, the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'"  Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)).  Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  Id. at 247-48 (emphasis added).

In reversing a grant of summary judgment, the Second Circuit noted that the "[t]rial court's task at the summary judgment motion stage of litigation is carefully limited to discerning

whether there are any genuine issues of material fact to be tried, not to deciding them." Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## B. The Lease Provisions

In this case, the defendant seeks summary judgment based on a provision in the lease agreement, the meaning of which is disputed by the parties. Specifically, under the lease agreement, H&M and Macerich each obtained insurance policies which permitted the insured to waive the right to subrogate. (Def.'s Rep.[5] at 5-6; see also Def.'s Aff. Ex. D §§ 8.2-.3 (lease provisions regarding insurance)). H&M's insurance policy included the following provision regarding subrogation: "'You' may waive 'your' right to recover from others in writing before a loss occurs." (Def.'s Rep. Aff.[6] Ex. B at 22). Macerich's policy included a similar provision: "We waive any right of recovery we may have against any person or organization that you agree in a written contract to waive." (Def.'s Rep. Aff. Ex. A, Doc. 38-3 at 33[7]).

The lease agreement entered into by H&M and Macerich contained the following waiver of subrogation provision:

> Notwithstanding anything to the contrary contained in this Lease, Landlord and Tenant each hereby waives any and all rights of recovery against the other or against the Tenant Parties and

---

[5]Citations to "Def.'s Rep." refer to "Defendant Skanska's Reply Memorandum of Law in Further Support of Summary Judgment Motion," submitted on October 27, 2008.

[6]Citations to "Def.'s Rep. Aff." refer to the Reply Affirmation in Further Support of Motion for Summary Judgment Dismissing Complaint signed by Jonathon Groubert and submitted by defendant Skanska on October 27, 2008.

[7]This citation refers to page 33 of Electronic Case Filing system document number 38-3.

5

Landlord Parties, respectively, . . . on account of loss or damage of such waiving party or its property, or the property of others under its control, to the extent that such loss or damage is insured against under any property insurance policy which either may have in force at the time of such loss or damage.

(Def.'s Aff. Ex. D § 8.4). The term "Landlord Parties" is defined in the lease as follows:

> **Landlord Parties** means, collectively, the Manager, Landlord's Designees and the respective past, present and future partners, officers, directors, shareholders, beneficiaries, trustees, employees, agents, servants and independent contractors of both Landlord and Manager.

(Def.'s Aff. Ex. D, Ex. D[8] § 2.48).

The parties dispute the meaning of the term "Landlord Parties" and whether, under these provisions of the lease, H&M has waived its right to bring this subrogation claim against Skanska.

C. Contract Interpretation

Under New York law, the intent of the parties as expressed in a written contract governs, and the intent must be ascertained from the plain meaning of the language employed. See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A., 342 F.3d 78, 82 (2d Cir. 2003); Painewebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996). It is well-established that "'[a] contract should be construed so as to give full meaning and effect to all of its provisions,'" Painewebber Inc. v. Bybyk, 81 F.3d at 1199 (citations omitted), and "'[w]ords and phrases are given their plain meaning.'" Id. (citations omitted); see also Federal Deposit Ins. Corp. v. Bernstein, 786 F. Supp. 170, 178 (E.D.N.Y. 1992).

Whether certain contract language is ambiguous is a question of law that may properly be

---

[8]This citation refers to Exhibit D of the lease agreement, which was submitted by defendant as Exhibit D to its affidavit.

considered on a motion for summary judgment. See Cleveland Wrecking Co. v. Hercules Constr. Corp., 23 F. Supp. 2d 287, 291 (E.D.N.Y. 1998) (citing Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992); Arcadian Phosphate, Inc. v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir. 1989)), aff'd, 198 F.3d 233 (2d Cir. 1999); see also Wards Co. v. Stamford Ridgeway Assocs., 761 F.2d 117, 120 (2d Cir. 1985). Thus, where a contract's terms set forth a "'definite and precise meaning absent any ambiguity,'" summary judgment should be granted. Cleveland Wrecking Co. v. Hercules Constr. Corp., 23 F. Supp. 2d at 290 (quoting Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d at 428).

In determining whether a provision is ambiguous, the court must consider the entire contract in order to avoid adopting an interpretation that would result in an inconsistency between provisions or that would render a particular provision superfluous. RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003); Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992). Similarly, a basic principle of contract construction is that particular language prevails over general language in determining the meaning of a contract provision. See United States v. Local 6A, Cement and Concrete Workers, Laborers Int'l Union of North America, 832 F. Supp. 674, 679-80 (S.D.N.Y. 1993). When the parties' intent can be determined from the plain language of the agreement, extrinsic evidence may not be considered. See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A., 342 F.3d at 82.


B.  Waiver of Subrogation Provision

Defendant Skanska argues that under the waiver of subrogation provision included in plaintiff H&M's lease, H&M has waived any right to recover from the "Landlord," Macerich,

and any "Landlord Parties" which include independent contractors such as Skanska because H&M's claim stems from work performed by Skanska as an independent contractor for Macerich. Thus, as contemplated by the lease agreement, any losses sustained by H&M should be borne by H&M's insurance carrier, and the waiver provision was intended to preclude recovery against independent contractors from insurers. Skanska argues that under the terms of the lease, the waiver of subrogation clause applies to all independent contractors engaged by Macerich.

H&M contends that the waiver of subrogation clause is ambiguous as to its intended scope and offers two arguments explaining why the waiver provision does not preclude recovery in this case. First, H&M argues that the provision does not apply to Skanska because the damages at issue did not occur in the course of Macerich's typical duties to its tenant H&M, but rather Skanska's activities were "extraneous to the lease agreement." Second, H&M argues that the waiver provision is void as a matter of public policy because the parties have failed to meet the requirements of mutuality under New York contract law.

1. Scope of Waiver Provision

"Subrogation, an equitable doctrine, allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse. While parties to an agreement may waive their insurer's right of subrogation, a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears." Kaf-Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y.2d 654, 660, 687 N.E.2d 1330, 1332-33, 665 N.Y.S.2d 47, 49-50 (1997) (citations omitted).

Here, plaintiff argues that the landlord's renovations were not undertaken as part of the

8

"landlord's duties to its tenant H&M as a typical land owner responsible to provide [sic], for example, clean hallways, heated plumbing pipes and safe electrical service," but rather "during the course of a $17 million construction expansion project to make the Queens Center Mall a larger more profitable center for the landlord to lease to even more perspective [sic] tenants." (Pl.'s Mem. at 7). The project, plaintiff argues, "had nothing to do with H&M." (Id.)

In arguing that the waiver of subrogation clause is unenforceable against Skanska, H&M relies on the case of Interested Underwriters of Lloyd's v. Ducors, Inc., 103 A.D.2d 76, 478 N.Y.S.2d 285, (1st Dep't 1984), aff'd, 65 N.Y.2d 647, 481 N.E.2d 252, 491 N.Y.S.2d 620 (1985). There a tenant's insurer brought an action against the tenant's landlord for damages caused by a fire that originated in an adjoining building owned by the same landlord. The court declined to enforce the waiver of subrogation clause, holding that "the loss claimed ar[ose] out of an act wholly outside the scope of the landlord and tenant relationship." Id. at 76, 77, 478 N.Y.S.2d at 286, 287. The court concluded that the lease agreement's allocation of risk between the parties was limited to those risks "which arise out of the landlord's ownership and the tenant's use and occupancy of the demised premises." Id. at 78, 478 N.Y.S.2d at 287.

Similarly, in One Beacon Ins. Co. v. French Inst. Alliance Francais NYC, a tenant's insurer brought an action against the tenant's landlord for damages resulting from water discharged into the tenant's space from the premises above. 50 A.D.3d 388, 858 N.Y.S.2d 91 (1st Dep't 2008). The court refused to grant summary judgment based on a waiver of subrogation clause because an issue of fact existed as to whether the flooding was caused by a problem with the building-wide heating system, which fell within the scope of the landlord-tenant relationship, or with the thermostat in the premises above, which was outside the scope of the relationship. Id.

at 389, 858 N.Y.S.2d at 92.

By contrast, where a tenant's insurer brought an action against the tenant's landlord for damages resulting from a ruptured pipe during the course of renovations in the apartment above the tenant's premises, the court held that the renovation work "was not 'wholly outside the scope of the landlord and tenant relationship'" and granted summary judgment on the basis of a "broad" waiver of subrogation clause. Atl. Mut. Ins. Co. v. Elliana Props., 261 A.D.2d 296, 296, 691 N.Y.S.2d 412, 412-13 (1st Dep't 1999) (emphasis in original omitted) (quoting Interested Underwriters at Lloyds v. Ducor's Inc., 103 A.D.2d at 77, 478 N.Y.S.2d at 287). Similarly, a waiver of subrogation provision was also held to prevent recovery where a flood was caused by a landlord's failure to properly maintain sprinkler pipes. St. Paul Fire & Marine Ins. Co. v. JEMP Realty Corp., No. 05 CV 1958, 2006 WL 2053241, at *4 (S.D.N.Y. July 20, 2006).

In order to determine the proper scope of the provision at issue, the Court looks to the language of the lease agreement and the intent of the parties as expressed therein. See Painewebber Inc. v. Bybyk, 81 F.3d at 1199. This requires an examination of the context in which the waiver provision appears in the agreement. See Kaf-Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y.2d at 660, 687 N.E.2d at 1332-33, 665 N.Y.S.2d at 49-50. Indeed, the rule cited by the New York Court of Appeals in Kaf-Kaf makes no general statement about the scope of a waiver of subrogation clause but rather confines such a clause only to "the specific context in which it appears." Id. at 660, 687 N.E.2d at 1332-33, 665 N.Y.S.2d at 49-50.

Here, plaintiff's lease agreement with Macerich suggests that the renovation project had a great deal to do with H&M. The lease agreement contemplates more than a single unit or building containing discrete units, but rather discusses a retail space within a large,

interconnected Mall containing other retail establishments, parking spaces, hallways, and numerous common areas. (Def.'s Aff. Ex. D, Exs. B-3, -4). More importantly, the lease specifically provides for the possibility of a major expansion of the Mall, including granting H&M various rights in the event of such an expansion. (Def.'s Aff. Ex. D § 2.4). Therefore, as with the defendant in <u>Atlantic Mutual</u>, Macerich's renovation activities were contemplated by the lease agreement and not "wholly outside the scope of the landlord and tenant relationship."[9]

Plaintiff contends that if the provision applies to Skanska, then it would logically extend to a situation where "a worker of [Skanska's] company negligently drove into the storefront of another H&M store, even one in California." (Pl.'s Mem. at 9). This argument conflates the question of whether the landlord's independent contractors fall within the scope of the waiver provision with the question of what sort of activities fall within its scope. While the provision does apply to independent contractors, it is nevertheless limited under <u>Kaf-Kaf</u> to "the specific context in which it appears." Thus, the waiver would not apply to activities at a remote location unrelated to the lease agreement, regardless of whether the activities were conducted by an independent contractor or by the landlord itself.

Finally, plaintiff argues that Skanska's activities were outside the scope of the waiver provision because Skanska "is not mentioned <u>anywhere</u> in the subject Lease Agreement." (<u>Id.</u>) However, the waiver provision applies not just to the landlord itself, but also to "Landlord Parties," which explicitly includes the landlord's "independent contractors." Since there is no

---

[9]The Court notes that although H&M's Memorandum of Law contains a section arguing that summary judgment is not warranted because "there are numerous facts at issue that need adjudication by a jury" (Pl.'s Mem. at 3), plaintiff has not set forth in any of its papers what those disputed issues of fact may be, nor has it offered any facts by way of parol evidence that would shed light on the parties' intent with respect to this provision in the lease agreement or the proper interpretation of the scope of the provision.

dispute that Skanska was acting within the scope of its construction contract with Macerich, the waiver provision clearly applies to an independent contractor such as Skanska, and there has been no basis offered by plaintiff to confine its application to entities referenced by name in the lease. Indeed, if the parties had intended to restrict the scope of the waiver to entities specifically named in the lease, the use of the term "Landlord Parties" would be superfluous. The fact that the term is explicitly defined in the agreement to include a variety of parties strongly suggests that the term was not superfluous. See RJE Corp. v. Northville Indus. Corp., 329 F.3d at 314 (admonishing courts to avoid a contract interpretation that would render a provision superfluous).

2. Mutuality of Waiver Provision

Plaintiff's second argument is that enforcement of this waiver provision would be contrary to New York law.

In general, New York General Obligations Law prohibits enforcement of a lease provision exempting a landlord from liability for damage caused by the landlord's negligence. N.Y. Gen. Oblig. Law § 5-321. However, a waiver of subrogation provision is "viewed as a device by which the parties merely allocate the risk of liability between themselves to third parties through insurance," and enforcement of such a provision is not precluded by New York law. Interested Underwriters at Lloyds v. Ducor's Inc., 103 A.D.2d at 77, 478 N.Y.S.2d at 286; see also Great N. Ins. Co. v. Interior Constr. Corp., 18 A.D.3d 371, 372 (1st Dep't 2005) (holding that "where . . . sophisticated parties negotiating at arm's length have agreed to 'allocat[e] the risk of liability to third parties between themselves, essentially through the employment of insurance,' that agreement is enforceable") (quoting Hogeland v. Sibley, Lindsay & Curr Co., 42

12

N.Y.2d 153, 161, 366 N.E.2d 263, 267, 397 N.Y.S.2d 602, 607 (1977))); Brentano's, Inc. v. Charter Mgmt. Corp., 46 A.D.2d 861, 361 N.Y.S.2d 665 (1st Dep't 1974).

Plaintiff argues that the waiver provision here is unenforceable because it does not fulfill mutuality requirements. Specifically, plaintiff contends that the provision is unenforceable against Skanska because "the defendant has not proven compliance with the insurance procurement obligation of the lease agreement." (Pl.'s Mem. at 4). However, Skanska, in a Reply Affirmation, submitted copies of insurance policies issued to both Macerich and H&M applicable to the time, location and incident at issue, demonstrating that both H&M and Macerich complied with their obligations to obtain insurance. (Def.'s Rep. at 5-6). Furthermore, each of the three cases plaintiff cites in support of its argument involved a waiver of subrogation clause that explicitly required each party to obtain an insurance policy permitting the insured to waive the right of subrogation. See St. Paul Fire & Marine Ins. Co. v. Tag 380, LLC, No. 05 CV 4917, 2007 WL 2872464, at *4-5 (S.D.N.Y. Sept. 27, 2007); Pub. Serv. Mut. Ins. Co. v. Windsor Place Corp., 238 A.D.2d 142, 142 (1st Dep't 1997); Commerce & Indus. Ins. Co. v. Admon Realty, 168 A.D.2d 321, 323 (1st Dep't 1990). Here, by contrast, the lease agreement does not explicitly require that the parties' insurance policies contain such permission. (See Def.'s Aff. Ex. D §§ 8.2-.3).

Plaintiff further relies on Brentano's and Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp., 275 A.D.2d 604, 713 N.Y.S.2d 38 (1st Dep't 2000), which do not discuss mutuality at all. Brentano's merely describes the mutual obligations contained in the lease agreement at issue in that case. Brentano's, Inc. v. Charter Mgmt. Corp., 46 A.D.2d at 861, 361 N.Y.S.2d at 665. Similarly, Continental addresses a situation where the lease agreement

13

included a requirement that the tenant's insurance policy contain a waiver of subrogation against the landlord. The court refused to enforce the lease's waiver of subrogation provision because the language included in the tenant's policy was inadequate to meet the lease's requirement. Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp., 275 A.D.2d at 605, 713 N.Y.S.2d at 39-40.

An argument might be advanced that in order for the waiver to constitute a true mutual allocation of risk, any third party (i.e., an entity not a party to the lease) to which the waiver applies, such as Skanska here, should be required to comply with the insurance obligations imposed on the parties to the lease. However, plaintiff has not attempted to make such an argument, and courts applying New York law have not imposed such a requirement on third parties as a prerequisite to enforcing a waiver provision. See Farmington Cas. Co. v. 23rd St. Props. Corp., 250 F. Supp. 2d 293 (S.D.N.Y. 1999) (enforcing waiver on behalf of managing agent as well as landlord where agent's alleged negligence caused a flood), aff'd sub nom. Farmington Cas. Co. v. Williams Real Estate Co., 225 F.3d 645 (2d Cir. 2000); Pilsener Bottling Co. v. Sunset Park Indus. Assocs., 201 A.D.2d 548, 607 N.Y.S.2d 961 (2d Dep't 1994) (holding waiver applicable to landlord's employee as well as to landlord where employee allegedly caused a fire).

Therefore, by the plain language of the lease agreement, the waiver provision at issue here is applicable as to defendant Skanska and precludes recovery by plaintiff.[10]

---

[10]Similarly, the waiver of subrogation provision would also appear to preclude recovery from defendant Seasons because, as a subcontractor of Skanska's on the renovation project, Seasons is similarly situated as an independent contractor falling within the definition of "Landlord Parties." However, Seasons has not moved at this time and therefore the Court has not addressed the issue.

## CONCLUSION

For the reasons set forth above, this Court finds that there are no genuine issues of material fact in dispute and grants defendant's motion for summary judgment, dismissing plaintiff's claims against defendant Skanska.

**SO ORDERED.**

Dated: Brooklyn, New York
   December 23, 2008

Cheryl L. Pollak
United States Magistrate Judge